IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02251-EWN-CBS

JERRY GRADY,
    Plaintiff,
v.

BARBARA HOLMES,
    Defendant.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on: (1) Mr. Grady's filing entitled "Temporary Restraining Order Relief" (filed February 4, 2008) (doc. # 11) (docketed by the Clerk of the Court as a "Motion for Temporary Restraining Order"); and (2) Defendant Ms. Holmes' "Motion to Dismiss Plaintiff's Complaint" (filed April 28, 2008) (doc. # 32). Pursuant to the Order of Reference dated February 13, 2008 (doc. # 14) and the memoranda dated February 13, 2008 (doc. # 16) and April 29, 2008 (doc. # 34), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Ms. Holmes' Brief (doc. # 33), Mr. Grady's "Memorandum Brief . . ." (doc. # 37), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Grady is incarcerated at the Buena Vista Minimum Center of the Colorado

1

Department of Corrections ("CDOC"). Proceeding *pro se*, Mr. Grady filed his Amended Prisoner Complaint on January 22, 2008. (*See* doc. # 10). After the district court's "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" dated February 7, 2008 (doc. # 12), Ms. Holmes is the only Defendant remaining in the case. Ms. Holmes is a "Faith/Volunteer" at the Buena Vista Minimum Center. (*See* Amended Complaint (doc. # 10) at p. 2 of 22).

Mr. Grady alleges infringement of his right to practice his religion, in violation of: (1) the First Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, (2) the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, and (3) Colo. Rev. Stat. § 17-42-102. (*See* Amended Complaint (doc. # 10) at pp. 4, 12 of 22). Mr. Grady alleges that he is Native American. (*See id.* at p. 4 of 22). A recent increase in the price of firewood used for sweat lodge ceremonies, from $30.00 to $140.00 per cord, "makes it impossible" for him "to be able to afford to" conduct sweat lodge ceremonies on a weekly basis. (*See* Amended Complaint (doc. # 10) at p. 5 of 22). Mr. Grady alleges that Ms. Holmes has "retaliated against [him] . . by not supplying any firewood for over 180 days." (*See* Amended Complaint (doc. # 10) at p. 5 of 22). As relief, Mr. Grady seeks compensatory damages and injunctive relief in the form of "firewood, for a weekly sweat lodge," sweat ceremonies "on a weekly basis" . . . for "(8) hours per sweat ceremony[ ]," and removal of Ms. Holmes "from dealing with Jerry Grady. . . ." (*See* Amended Complaint (doc. # 10) at p. 14 of 22).

II. Defendant's Motion to Dismiss

A. Standard of Review

Ms. Holmes has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

The court must construe Mr. Grady's Amended Complaint liberally because he is representing himself. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted). However, the court

cannot be a *pro se* litigant's advocate. *Hall*, 935 F. 2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

B.  Analysis

1.  Liability of Ms. Holmes in her Official Capacity

It is not clear whether Mr. Grady is suing Ms. Holmes in her individual capacity, her official capacity, or both. (*See* Complaint (doc. # 5) at p. 2 of 10). To the extent that Mr. Grady is suing Ms. Holmes in her official capacity, he is actually attempting to impose liability on the State of Colorado. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State

4

itself").

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this case, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Likewise, "a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA." *Lovelace v. Lee*, 472 F.3d 174, 193-94 (4th Cir. 2006) (citation omitted).  Thus, any claim for money damages brought against Ms. Holmes in her official capacity under § 1983 or under RLUIPA is barred by the Eleventh Amendment and is properly dismissed with prejudice.

2.     Liability of Ms. Holmes in her Individual Capacity

RLUIPA does not authorize suits against individual defendants.  *Boles v. Neet*, 402 F. Supp. 2d 1237, 1240 (D. Colo. 2005).  *See also Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) (section 3 of RLUIPA, 42 U.S.C. § 2000cc-1, "cannot be construed as creating a private action against individual defendants for monetary damages"), *reh'g and reh'g en banc denied*, ___F.3d ___ (11th Cir. (March 3, 2008)).  Mr. Grady's claim against Ms. Holmes in her individual capacity under RLUIPA is properly dismissed with prejudice.

5

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). Personal capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67. To the extent that Mr. Grady is suing Ms. Holmes in her individual capacity pursuant to § 1983 and seeks injunctive relief under § 1983 and RLUIPA, the court proceeds to evaluate his claims under Rule 12(b)(6).

3.   First Amendment and RLUIPA Claims

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Although inmates retain First Amendment rights, those rights are not without reasonable limitations. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his sincerely held religious beliefs. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). The Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on

6

the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). The definition of substantial burden does not include "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988).

Section 3 of RLUIPA applies strict scrutiny to government actions that substantially burden the religious exercise of institutionalized persons.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "This section applies in any case in which -- (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; . . ." 42 U.S.C. § 2000cc-1(b)(1). "The term 'substantial burden' as used in [RLUIPA] is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden of religious exercise." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006) (quoting 146 CONG. REC. 7774-01, 7776).

> Thus, a claim under RLUIPA includes four elements. On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. Id. § 2000cc-2(b). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to

7

the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest.

*Spratt v. Rhode Island Dept. of Corrections*, 482 F. 3d 33, 37-38 (1st Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a).

Mr. Grady has not adequately alleged a substantial burden on his religious exercise. Mr. Grady has not alleged that he is denied the opportunity to observe the tenets of his religion or that he is discriminated against for his beliefs. His complaint is that Ms. Holmes will not provide him firewood at reduced or no cost. Prisons do not have an affirmative duty to provide religious materials or other religious articles free of charge to inmates. *See Frank v. Terrell*, 858 F.2d 1090 (5th Cir. 1988) (quoting *Cruz v. Beto*, 405 U.S. 319, 323 (1972) ("[t]here cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country") (Burger, C.J. concurring) (other citations omitted). A substantial burden must place more than an inconvenience upon religious exercise. *Schnitzler v. Reisch*, 518 F. Supp. 2d 1098, 1104 (D.S.D. 2007). *See also Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) ("In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.' ") (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987)). A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See id.* "The Supreme Court has also repeatedly held that

8

the fact that a person has a constitutional right . . . does not necessarily impose upon the government an obligation to subsidize that right." *Goodall by Goodall v. Stafford County School Board*, 60 F.3d 168, 171 (4th Cir. 1995) (citations omitted), *cert. denied*, 516 U.S. 1046 (1996).

All that is required is a reasonable opportunity to practice one's religion and Mr. Grady's allegations do not support a claim that such an opportunity has been denied him. The pleadings do not suggest that Mr. Grady has been denied the opportunity to obtain firewood on his own. (*See, e.g.*, Amended Complaint (doc. # 10) at p. 16 ("It is not possible for the Department of Corrections and/or the Buena Vista Correctional Complex to fix the price of firewood sold by a private vendor. The vendor charges $135.00 per cord. This price is at or below the current market rate in the county for a cord of cut/split firewood. The previous price of $30.00 per cord was a price set by Correctional Industries who supplied the wood through their various operations. They notified us in March 2007 that the supply was exhausted.")). Mr. Grady's own allegations indicate that he has not been foreclosed from practicing his religion. (*See, e.g.*, Amended Complaint (doc. # 10) at p. 8, 9, 15 ("AR 800-1 (Religious Programs) states on attachment E page 1, that when there isn't firewood, offenders will be give two hours to gather communally. . . There was inadequate wood for a sweat lodge ceremony at the BVMC on October 20th (Sat.). The faith group was given the opportunity to gather for two hours for a pipe ceremony, smudging, drumming, singing & prayer circle. A lighter was provided. . . ."); *see also* doc. # 33-2 at p. 23 of 25 (Administrative Regulation ("AR") 800-1, Religious Programs, Services, Clergy, Faith

9

Group Representatives, and Practices, Attachment "E" at p.1 of 9, Allowable Faith Items and Group Property ("Firewood – amount contingent to facility space, security – when there isn't firewood, given two hours to gather communally – sweat lodge will not be covered or used")).[1]

Mr. Grady cites the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, in support of his arguments. (*See* Response (doc. # 37) at pp. 2-3, 5-7, 9-11). However, RFRA was found to be unconstitutional as applied to purely state action in *City of Boerne v. Flores*, 521 U.S. 507 (1997) (holding that RFRA may not be applied to purely state, as opposed to federal, action). In sum, Mr. Grady's claims for violation of his right to practice his religion lack a factual or legal basis under RLUIPA or the First Amendment and are properly dismissed.

b.  Prisoner Litigation Reform Act of 1995

Ms. Holmes further asserts that Mr. Grady may not recover compensatory damages because he did not suffer a physical injury as required by the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e). The PLRA provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir 2001) (applying section

---

[1] Mr. Grady contests that the AR does not contain this language. (*See* Amended Complaint (doc. # 10) at pp. 8, 9 of 22; *but see* doc. # 33-2 at p. 23 of 25).

1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

RLUIPA addresses the application of the PLRA as "[n]othing in this chapter shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act)." 42 U.S.C. § 2000cc-2(e). By this provision, Congress clearly anticipated the PLRA would apply to RLUIPA claims. Even the courts that have held monetary relief against a state official in his or her official capacity is authorized by RLUIPA, also find such damages are limited by the PLRA to the extent the prisoner plaintiff has not made a showing of physical injury in addition to mental or emotional injury. *See Smith v. Allen*, 502 F.3d at 1269-71 (collecting cases).

Mr. Grady has not alleged he suffered any physical injury as a result of Ms. Holmes' actions in this case. Accordingly, Mr. Grady would be limited to recovery of nominal damages, punitive damages, and injunctive and declaratory relief for his First Amendment claim and his RLUIPA claim. *See Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004) (holding that an inmate may recover an award of nominal damages under the PLRA despite the lack of a physical injury); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 n. 6 (10th Cir. 1999) ("While a claim [under § 1983] for compensatory damages would clearly be barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred"). Nor would § 1997e(e) bar claims for injunctive relief. *Perkins*, 165 F.2d at 808. Mr. Grady has not sought nominal or punitive damages. For this reason also, Mr. Grady is not entitled to any damages in this case.

c. State Law Claim

If the district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). *See also Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004) ("[F]ederal jurisdiction is not mandatory over pendent claims or parties."). Title 28 U.S.C. § 1367(c) "provides conditions where district courts may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Harshman*, 379 F.3d at 1165 (citation omitted).

Here, the court recommends dismissal of the claims over which it could have had original jurisdiction. The interests of judicial economy counsel against retaining supplemental jurisdiction over Mr. Grady's single remaining state law claim when his federal claims are dismissed at an early stage of the litigation. Principles of comity suggest that the Colorado courts will be better suited to adjudicate Mr. Grady's claim raised under Colo. Rev. Stat. § 17-42-101. Although § 17-42-101 broadly mandates the protection of an inmate's right to free exercise of religion, it does not address the specific violation alleged by Mr. Grady. Mr. Grady has cited and the court has found no legal authority that § 17-42-101 creates a private right of action. Further, to the extent that Mr. Grady seeks injunctive relief pursuant to § 17-42-101, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). The court

may properly decline to exercise supplemental jurisdiction over Mr. Grady's single remaining state law claim.

d.      Qualified Immunity

Defendant Holmes argues that she is entitled to qualified immunity from Mr. Grady's claims. "The doctrine of qualified immunity provides that [w]hen government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Maynard*, 80 F.3d 1433, 1447 (10th Cir. 1992) (internal quotation marks and citations omitted). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right? If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.

*Wilder*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Currier v.*

13

*Doran*, 242 F.3d 905, 917 (10th Cir. 2001) ("Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law.") (citation omitted).

Because the court concludes that section 3 of RLUIPA does not permit a claim against Ms. Holmes in her individual capacity, the court need not address the secondary question of whether Ms. Holmes would be entitled to a defense of qualified immunity as to the RLUIPA claim. *Smith v. Allen*, 502 F.3d at 1275 (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (stating that the qualified immunity defense only applies when the defendant is sued individually)). As to Mr. Grady's First Amendment claim, because the court has concluded in this Recommendation that Mr. Grady has failed to state a claim upon which relief can be granted, Ms. Holmes is entitled to qualified immunity. *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

III. Motion for Temporary Restraining Order

Under Fed. R. Civ. P. 65(b), a temporary restraining order may be granted only if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant." A moving party must demonstrate certain prerequisites for temporary or preliminary injunctive relief:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3)

> the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

*Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). A moving party may have an "even heavier burden" of showing a compelling basis for injunctive relief where the requested preliminary injunction would disturb the status quo, is mandatory as opposed to prohibitory, or would provide the moving party with substantially all the relief he may recover after a full trial on the merits. *Kikumura*, 242 F.3d at 955. The relief sought by Mr. Rodriguez would alter rather than preserve the status quo and would constitute a mandatory injunction. "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal quotation marks and citation omitted).

In light of the issues raised by Ms. Holmes' Motion to Dismiss and discussed by the court in this Recommendation, Mr. Grady has not demonstrated a substantial likelihood of success on the merits of the case. Mr. Grady has not adequately addressed or demonstrated the additional prerequisites for temporary or preliminary injunctive relief. Because Mr. Grady has failed to satisfy the four prerequisites, he has not sustained his burden of demonstrating a compelling basis for a temporary restraining order.

Accordingly, IT IS RECOMMENDED that:

1. Defendant Ms. Holmes' "Motion to Dismiss Plaintiff's Complaint" (filed April 28, 2008) (doc. # 32) be GRANTED and this civil action be dismissed.

2. Mr. Grady's filing entitled "Temporary Restraining Order Relief" (filed February 4, 2008) (doc. # 11) (docketed by the Clerk of the Court as a "Motion for Temporary Restraining Order") be DENIED.

DATED at Denver, Colorado, this 16th day of June, 2008.

BY THE COURT:


　　s/Craig B. Shaffer
United States Magistrate Judge